**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**TIFFANY ADELE EDWARDS,**

    **Plaintiff,**

v.                                                                                          CASE NO. 8:13-cv-01438-17-EAJ

**CAROLYN W. COLVIN,
Commissioner of Social Security,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") payments under the Act.

    After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned recommends affirming the Commissioner's decision and dismissing this case.[1]

    In an action for judicial review, the reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person

---

[1] The District Judge referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rule 6.01(a), M.D. Fla.

1

would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).[2]

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**Background**

On March 12, 2010, Plaintiff filed an application for DIB, and, on March 25, 2010, she filed an application for SSI, both alleging disability beginning on January 14, 2009. (T 23) Plaintiff's applications were denied initially and upon reconsideration, and an administrative hearing was held on October 4, 23, 2010. (T 23, 43) Forty-nine years old at the time of the hearing, Plaintiff has a high school education and past relevant work experience as a histotechnologist. (T 35, 231)

On December 27, 2011, an ALJ denied Plaintiff's applications. (T 37) The ALJ found that Plaintiff's severe impairments included: lumbar strain, degenerative disc disease, degenerative joint disease, migraines, and left shoulder bursitis. (T 25) However, the ALJ concluded that these impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P App. 1. (T 31) Plaintiff was determined to have a residual functional capacity ("RFC") to perform light work except that she could never climb ladders, ropes, scaffolds, ramps, or stairs; she could only work on flat level ground; she could not drive; she could have no exposure to vibrating

---

[2] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

machinery or hazardous machinery; and both of her upper extremities would be limited to frequent overhead reaching. (Id.)

The ALJ found that Plaintiff was unable to perform her past relevant work. (T 35) However, based on testimony from a Vocational Expert ("VE"), the ALJ concluded that Plaintiff was capable of doing other jobs that exist in significant numbers in the national economy such as ticket seller, parking lot attendant, and small product assembler. (T 35, 36) Accordingly, the ALJ determined that Plaintiff was not disabled during the relevant time period. (T 23, 36) On April 3, 2013, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 8-11)

The medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## Discussion

Plaintiff contends that the ALJ erred by: (1) failing to properly weigh certain opinions of her treating physician, Jayam Krishna Iyer, M.D. ("Dr. Iyer"); and (2) failing to properly evaluate her credibility.

**A.** Plaintiff argues that the ALJ failed to properly weigh the medical opinions of record by not giving certain opinions of her treating physician, Dr. Iyer, controlling weight in his RFC determination. (Dkt. 12 at 10-11)  Dr. Iyer treated Plaintiff from November 4, 2003 to July 2011 for "intractable migraine, daily head ache, and chronic low back pain" made worse by a motor vehicle accident in June 2007.  (T 644)

On January 11, 2010, Dr. Iyer opined by handwritten note that Plaintiff was not "capable of any gainful employment" due to her chronic medical condition. (T 301)  On July 25, 2011, Dr. Iyer completed a Spinal Impairment Questionnaire ("Questionnaire") which listed Plaintiff's primary symptoms as constant ache in her posterior neck, sharp pains and intermittent constant dull ache in her

3

left shoulder, throbbing pain from migraines, and constant lumbar pain, with compression fracture and chronic left shoulder bursitis cited as the cause. (T 636-37)  The Questionnaire also assessed Plaintiff's RFC as: one to two hours of sitting and one hour of standing or walking in an eight-hour workday; no continuous sitting, standing, or walking; needing to change positions every ten to fifteen minutes and take fifteen to thirty minute breaks from sitting; occasional ability to lift or carry up to ten pounds; constant pain severe enough to interfere with attention and concentration; no tolerance for "low stress" work; needing unscheduled breaks every fifteen to twenty minutes; psychological limitations; needing to avoid noise, fumes, gases, and extreme temperatures; and no pushing, pulling, kneeling, bending, or stooping. (T 636-40)  The Questionnaire lists January 14, 2009, as the earliest onset date for these symptoms and limitations. (T 640)  On August 25, 2011, Dr. Iyer reiterated her earlier opinion, stating that Plaintiff is medically permanently impaired and cannot engage in "any gainful employment in the future." (T 644)

    An ALJ generally must give a treating physician's medical opinions substantial or considerable weight. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  However, upon a showing of good cause, an ALJ may disregard a treating physician's opinion as long as the ALJ "clearly articulate[s] [the] reasons" for doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  Good cause exists when: "(1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Id. at 1241.  Ultimately, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Syrock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (citations and internal quotation marks omitted).  Further, "[a] doctor's opinion on dispositive issues reserved to the Commissioner, such as whether the claimant is disabled or unable to work, is excluded from the definition of a medical opinion and is not given special weight, even if it is offered by a treating source, but the ALJ should still consider the opinion." Lawton v. Comm'r of Soc.

Sec., 431 F. App'x 830, 834 (11th Cir. 2011) (per curiam) (unpublished)[3] (citing 20 C.F.R. § 404.1527(e)).

The ALJ recognized that Plaintiff received routine medication management treatment from Dr. Iyer over an extended period of time. (T 26) Nevertheless, he gave little weight to her opinions regarding Plaintiff's level of impairment and ability to work. (T 28) The ALJ found that:

> Dr. Iyer's opinions are quite conclusory, providing very little explanation of the evidence relied on in forming those opinions. Dr. Iyer also apparently relied quite heavily on the claimant's subjective report of symptoms and limitations, and seemed to uncritically accept as true, most, if not all, of what the claimant reported. Dr. Iyer opined that the claimant had postural and other limitations that were not in Dr. Iyer's treatment records, and Dr. Iyer recommended little to nor restrictions in her treatment records. Further, Dr. Iyer's treatment record [sic] are internally inconsistent, they are inconsistent with her opinions, and they are inconsistent with the medical record, which renders her opinions less persuasive. For instance, Dr. Iyer[']s records routinely indicate the claimant's "duration of symptoms is several days out of the month", and that the claimant's "symptoms are constant". Dr. Iyer[']s records also indicate the claimant's "symptoms are alleviated by medication"; and that the claimant often reported that her pain was manageable with her medications, she was managing ok with her medications, and her migraines were ok with her medications . . . . Dr. Iyer[']s records also routinely indicate that the claimant was 184 pounds, however this is inconsistent with the medical evidence. For example, Dr. Shefsky noted on May 17, 2010, that the claimant weighed 239 pounds . . . . Finally, Dr. Iyer[']s routinely noted that the claimant had diminished deep tendon reflects in her bicep, however, Dr. Shefsky noted that the claimant's deep tendon reflex were physiologic and equal in upper and lower extremities. In that regard, Dr. Iyer[']s opinions are given little weight.

(Id.)

Plaintiff argues that Dr. Iyer based her opinions on appropriate medical findings of:

> limited flexion of the cervical spine, decreased range of motion of the lumbar spine, constant muscle tenderness in the cervical spine, tenderness in the upper lumbar area, muscle spasm in the upper lumbar spine, decreased reflexes related to the cervical and lumbar spines, an abnormal gait, swelling in the jaw and upper and lower back, trigger points in the lumbar area, and findings shown on CT scan of the spine.

---

[3] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

(Dkt. 12 at 11), and not solely on Plaintiff's subjective complaints. She also contends that Dr. Iyer's opinions are not inconsistent with other substantial evidence in the record and should therefore be accorded controlling weight. (Id. at 14)

The ALJ's review of the medical evidence suggests otherwise. The ALJ did not reject Dr. Iyer's medical findings. On the contrary, he incorporated them into his assessment of Plaintiff's level of impairment and RFC, quoting her findings of "muscle spasm, tenderness, diminished reflexes in her bicep, a normal straight leg raise, and decreased range of motion in the lumbar and cervical spines" throughout. (T 26, 33) The ALJ, however, did not credit Dr. Iyer's opinions on how these impairments limited Plaintiff's ability to work. He emphasized that Dr. Iyer did not explain the link between her medical findings and conclusions. (T 28) In addition to finding her opinions conclusory, the ALJ also found them inconsistent with other substantial evidence in the record.

The ALJ noted that Dr. Iyer's treatment records frequently suggested that Plaintiff, despite her impairments, had findings which were "mostly normal on examination" and that she could manage her pain through medication. (T 26-27) The ALJ observed that the results of Plaintiff's visits to St. Anthony's Hospital on June 8, 2011, Bayfront Medical Center on June 8, 2008 and April 11, 2009, further indicated that she was "mostly normal on examination" despite her impairments. (T 26, 29) The ALJ considered Plaintiff's May 2010 consultative exam with Dr. Shefsky, which revealed that she had a normal affect, equal and physiologic deep tendon reflexes in all extremities, stable and non-tender joints, full strength in all extremities and full dexterity and grip strength in her hands, a moderate limp that was improved by use of a cane, that she could not walk on her heels or toes, could not squat, but had full range of motion throughout except in her lumbar spine and also needed no assistance changing for the exam or getting off the exam table. (T 28, 431)

These findings led the ALJ to reasonably conclude that Dr. Iyer's opinions were conclusory or based solely on Plaintiff's subjective complaints. They also support the ALJ's RFC assessment, which

6

found Plaintiff capable of light work but with more limitations than the State agency medical consultant, Dr. Efren Baltazar, M.D., recommended. (T 31, 34, 478-85)  The ALJ noted that "the limitations described in the residual functional capacity [] include consideration of the claimant's symptoms" and that Dr. Baltazar's assessment is "given significant weight as it is consistent with the medical evidence." (T 34-35)  The ALJ did not fully incorporate Dr. Baltazar's opinion that Plaintiff could frequently balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds, and could frequently reach in all directions bilaterally, as it partially conflicted with Dr. Shefsky's assessment that Plaintiff had a moderate limp, could not walk on her heel or toes, could not do a full squat, and had a limited range of motion in her lumbar spine. (T 33-34, 480-81)

In conclusion, the ALJ properly weighed the medical opinions of record.  The ALJ demonstrated good cause to disregard Dr. Iyer's opinions on Plaintiff's functional limitations and ability to work.  He also clearly articulated his reasons for giving them less weight—he found Dr. Iyer's opinions conclusory insofar as they failed to explain their evidentiary basis and were based on inconsistent treatment records.  He also indicated, through his review of the overall record, that Dr. Iyer's conclusions were not supported by medical and opinion evidence.  As such, the ALJ did not err by failing to give Dr. Iyer's opinions controlling weight. See Barnhart, 357 F.3d at 1240-41; see also Weekley v. Comm'r of Soc. Sec., 486 F. App'x 806, 808 (11th Cir. 2012) (per curiam) (unpublished) (explaining that "a statement by a medical source that a claimant is 'disabled' or 'unable to work' does not mean that the agency must determine a claimant to be disabled").

**B.**     Plaintiff asserts that the ALJ did not properly assess the credibility of her statements regarding the intensity, persistence, and limiting effects of her symptoms. (Dkt. 12 at 15)   First, she contends that the ALJ applied the wrong legal standard in making his credibility determination.  Second, Plaintiff argues that "to the limited extent the ALJ did consider the record," his findings were insufficient to determine she was not credible.

Subjective complaints are evaluated according to a three-part "pain standard" that is used when a claimant attempts to establish disability through testimony about pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). A plaintiff must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition; or (3) the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam). If the ALJ does not credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons for doing so." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam). "A clearly articulated credibility finding that is substantially supported by the record will not be overturned." Id. at 1562 (citation omitted).

When she filed for disability, Plaintiff completed a pain questionnaire that stated she suffered from pain and chronic migraines that occasionally cause her to vomit, roll on the ground, and place a shirt over her head; that her pain was constant and worsens with sharp movement; that her medication relieves "about 90 to 95%" of her pain; that she can tend to her hygiene, drive, shop for groceries, do laundry, and clean the house with the help of her children; she can only sleep for twenty to thirty minutes before the pain wakes her; she must change sitting positions every two to five minutes, cannot stand for more than two to five minutes, and can only walk short distances; and that her "ability to work as a Histology Technologist is now an impossibility" due to her symptoms. (T 221-30) She also filed a function report which detailed how her symptoms limited her daily activities. (T 247-54)

At the hearing, Plaintiff testified that she had to use a cane to offset her limp; she had tingling in her extremities; her Xanax medication was helpful and calmed her back spasms; she had trigger points which could make her jump; she took methadone for her migraines and oxycodone for breakthrough pain; that she had been fired from her previous job for "calling in sick" due to lower

8

back pain and side-effects from methadone; that she had to leave grocery stores after fifteen minutes due to her back pain; had difficulty dressing herself, bathing, doing housework, and concentrating; had constant headaches which could result in breakthrough migraines about four to five times per year; that her headaches caused her light sensitivity and made her stay in bed all day; her urinary incontinence issues caused her to urinate up to half an hour seven to eight times per day; and that her pain averaged—on a scale of one to ten— "nine" with or without her medication. (T 46-56, 58-73)

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but nevertheless concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with his RFC. (T 33)

Plaintiff contends that the ALJ applied the wrong legal standard because he used boilerplate language suggesting that he compared her statements to "an RFC finding that was made *prior* to considering whether [her] statements were credible." (Dkt. 12 at 16-18)[4]  However, the ALJ's credibility determination does not have to include any "particular phrases or formulations" as long as it provides enough explanation for the court "to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (per curiam) (citation and internal quotation marks omitted); see also Rivera–Gonzalez v. Astrue, No. 8:11-cv-172-T-30EAJ, 2012 WL 2912651, at *1 (M.D. Fla. July 16, 2012) (adopting report and recommendation that found no error where ALJ used the same language but based credibility determination on inconsistencies between Plaintiff's testimony and the medical record); McGilvery v. Colvin, 8:12-cv-01933-T-27EAJ, 2013 WL 5408450 (M.D. Fla. Sept. 25, 2013) (same).  As the ALJ

---

[4]  Plaintiff cites Seventh Circuit cases that have questioned the use of similar language in an ALJ's credibility determination. See Bjornson v. Astrue, 671 F.3d 640, 645-46 (7th Cir. 2012). However, the Seventh Circuit has also found similar language harmless when "the ALJ has otherwise explained his conclusion adequately." Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012).

9

provided sufficient information to explain why he did not fully credit Plaintiff's allegations, this argument is without merit.

Also challenged is the ALJ's statement that he discounted Plaintiff's allegations because she drew unemployment benefits in 2009 and 2010, "thus holding herself out as able and willing to work" while simultaneously filing for disability benefits on the theory that she was disabled and "unable to work." (T 33) Plaintiff argues that the receipt of unemployment compensation is not a valid reason to discredit a claimant's credibility. See O'Neal v. Astrue, No. 3:08-cv-63-J-MCR, 2009 WL 702865, at *11 (M.D. Fla. Mar. 17, 2009). However, although the receipt of unemployment benefits alone does not disqualify a claimant from consideration for Social Security benefits, an ALJ may consider a claimant's receipt of unemployment compensation as one factor in evaluating a claimant's credibility. See Kalishek v. Astrue, No. 8:10-cv-714-T-23AEP, 2011 WL 4389643, at *5 (M.D. Fla. Aug. 23, 2011) (citations omitted); see also Estelle v. Astrue, No. 2:11-cv-337-FtM-99SPC, 2012 WL 4369296, at *20 (M.D. Fla. July 31, 2012); Boyd v. Astrue, No. 3:10-cv-105–J-JRK, 2011 WL 1259795, at *6-7 (M.D. Fla. Mar. 31, 2011); 20 C.F.R. § 404.1529(c)(3)(vii) (2011) (providing that the ALJ may consider "[o]ther factors concerning [a claimant's] functional limitations and restrictions due to pain or other symptoms"). Here, the ALJ did not err in relying on the inconsistency between receiving unemployment compensation and applying for disability benefits as one factor in evaluating Plaintiff's credibility.

The ALJ also explained that despite Plaintiff's claim that she was disabled due to migraines and back and shoulder problems, the medical evidence indicated that she was mostly normal on examination and doing fairly well; Dr. Iyer's notes frequently stated that Plaintiff could control her symptoms and pain through medication; and that Dr. Shefsky's physical examination indicated a different level of limitation than Plaintiff alleged. (T 34-35) The ALJ also noted that although Plaintiff claimed that she suffered from "nausea, tingling, numbness, balance problems, weakness, pain, light

10

sensitivity, headaches, and fatigue," objective evidence did not support these allegations and the record reflected that Plaintiff had failed to even mention many of these symptoms on numerous occasions. (T 33-34)  He also cited the lack of reference to such symptoms in Dr. Iyer's treatment records. (T 34)  In light of these discrepancies, the ALJ found that "[o]verall, the medical evidence is inconsistent with [Plaintiff's] allegations regarding the intensity and limiting effects of her symptoms, and this inconsistency undermines the credibility of [her] allegations." (Id.)

In conclusion, the ALJ articulated specific reasons for discounting Plaintiff's allegations about the limiting effects of her migraines and back and shoulder problems.  Substantial evidence supports the ALJ's credibility determination. See Allen v. Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989) (per curiam).

## Conclusion

For the foregoing reasons, the ALJ's decision is supported by substantial evidence and the proper legal principles.  Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) the decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2) the Clerk of the Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

ELIZABETH A. JENKINS
United States Magistrate Judge

**Date:  June 30, 2014**

11

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:

Counsel of Record

District Judge